ROBERTSON, Justice, for the Court:
ABC Finance Corporation filed with the Auditor of Public Accounts of Mississippi its claim for refund of an additional privilege tax assessed against it and paid under protest to the State Tax Commission. The State Auditor, on advice of the Attorney General, disapproved the claim for refund. ABC thereupon appealed to the Chancery Court of the First Judicial District of Hinds County, which court affirmed the decision of the State Auditor denying the refund.
ABC is a finance company engaged in the business of lending money on tangible personal property located in Mississippi. The payment of these loans is secured by trust instruments on the personal property. A privilege tax is levied on such a finance company under the provisions of Mississippi Code Annotated section 27-21-3 (1972), which Section provides:
*556 “There is hereby levied an annual statewide privilege tax upon every person, firm, corporation, or association, other than banks, state or national, doing business of lending money secured by mortgages, trust receipts, retained-title or purchase contracts, on motor vehicles, furniture, refrigerators containing mechanical freezing units operated by gas or electricity, or radios or any other tangible personal property, located in the State of Mississippi, or doing a business of purchasing, discounting, or otherwise acquiring notes, trust receipts, or other forms of indebtedness secured by liens, in the form of mortgages, retained-title or purchase contracts, or other liens, upon motor vehicles, furniture, refrigerators containing mechanical units operated by gas or electricity or other fuels, or radios or any other tangible personal property, located in this state (not including, however, cotton, cotton seed or agricultural products); the amount of said tax to bear a direct relationship to the value of the securities held, owned, or acquired by such person, firm, corporation or association, and exacted in return for the protection afforded by the government and laws of this state in the enjoyment of such ownership and rights acquired thereby; the tax to be computed by application of the rate hereinafter set out to the total value of such securities, other than those securities representing loans for the payment of the wholesale sales price and those securities representing transactions known as ‘floor plan,’ upon which no tax is to be imposed. Provided, however, that the tax imposed in this chapter shall not apply to persons, firms or corporations engaged in the general mercantile business, who make advancements of money, merchandise and supplies to their customers and who take mortgages, deeds of trust or other liens upon personal property to secure the payment of the indebtedness thus incurred.” (Emphasis added).
Other pertinent statutes involved are Sections 27-21-5 and 27-21-7. Section 27-21-5 provides:
“The annual rate by which the amount of the tax hereby levied shall be computed shall be one-fourth of one per centum of the total amount of indebtedness secured by tangible property located in the State of Mississippi.” (Emphasis added).
Section 27-21-7 states:
“The tax hereby levied shall be paid quarterly, one fourth of the annual tax being payable on or before beginning business, and one-fourth thereof within thirty days after each subsequent three-months period. For the first quarter-annual period, beginning on the effective date of this chapter, the amount to be paid before doing business shall be estimated, and within thirty days after the expiration of said quarter-period, the taxpayer shall determine the actual amount due on account of such business done during said first quarterly period, by applying the proper rate to the value of evidences of debt acquired in said period; and if the estimated amount theretofore paid is less than the actual amount found to be due, the balance shall be paid within thirty days after the expiration of said period. If the estimated amount already paid exceeds the actual amount found to be due, then the taxpayer shall take credit for such excess on subsequent payments. After the first quarter-annual period, the amount of the tax shall be based upon business done during the preceding quarter, and payments shall be made within thirty days after the expiration of each quarter period.”
ABC’s contentions are succinctly stated in its “Claim for Privilege Tax Refund”:
“The only questions involved in this claim are a matter of law, i. e. (a) whether ABC’s tax basis for the tax period should include the total finance charges made by ABC; and (b) whether ABC’s tax basis for the tax period should include amounts used to refinance previous loans made by ABC and for which the finance company privilege tax had previously been paid.”
No testimony was taken, the litigants stipulating to the following facts:
*557 “1. The face amount of notes taken by ABC on loans which were secured by personal property during the tax period of June 1, 1974, to May 31, 1975, inclusive, totaled $382,583.19.
“2. The amount of unearned finance charges included in the face amount of said notes taken by ABC during the tax period totaled $115,192.58.
“3. The portion of the ‘amount financed’ on new loans made by ABC secured by personal property during the tax period in question used to pay the balance of loans previously made and held by ABC totaled $108,055.74.
“4. Attached hereto as Exhibit 1 is a true copy of an installment promissory note, disclosure statement, and security agreement of one of the loans included in the tax period in question and is representative of all such loans. From this exhibit $1,920.00 is the face amount (included in the $382,583.19 total in paragraph 1 above); $551.01 is the finance charge (included in the $115,192.58 total in paragraph 2 above); and $193.30 is the portion of the amount financed used to pay the balance on a previously made ABC loan (included in the $108,055.74 total set forth in paragraph 3 above).
“5. If ABC’s contention that the finance charge should not be included in the base to which the one-quarter of one percent tax is applied is correct, ABC is entitled to a refund of $287.98. If ABC’s contention that the portion of the amount financed used to pay the balance on a loan previously made and held by ABC should not be included in the base to which the one-quarter of one percent tax is applied is correct, it is entitled to a refund of $270.13. If ABC’s contention on both points is correct, it is entitled to a refund of $558.11.
“6. If ABC’s contention is incorrect on both points, it is entitled to no refund.”
In enacting the “Finance Company Privilege Tax” laws (Sections 27-21-1 through 27-21-19), the Mississippi Legislature is somewhat in the position of a lawyer trying a case. It cannot put all parts of the law in one section; neither can a lawyer ask for all of the facts of a case in one question to a witness. A predicate must be laid; certain preliminary facts must be brought out. And so it is with tax legislation. It becomes necessary to determine the purpose of each portion of a statute in order to arrive at the intent of the legislature.
The purpose of Section 27-21-3 was to define with specificity the type of business upon which the tax was levied. It was not the purpose of Section 27-21-3 to set the exact percentage of the tax, nor was it its purpose to define with exactitude the amount upon which the tax would be figured. This section described the two indispensable factors in the formula for computing the tax in general terms only, “the rate hereinafter set out”, “the total value of such securities.”
The sole purpose of Section 27-21-7 was to provide that the tax would be paid in quarterly installments. It went into detail as to how the first quarterly installment should be estimated inasmuch as it had to be paid in before the finance company could begin business. Again these general terms were used to describe the two factors in the computation process, “by applying the proper rate to the value of evidences of debt acquired in said period.”
The only purpose of Section 27-21-5 was to specifically define the two factors to be used in computing the exact amount of the tax. Section 27-21-5 did this clearly, positively and unambiguously, when it provided:
“The annual rate by which the amount of the tax hereby levied shall be computed shall be one-fourth of one per centum of the total amount of indebtedness secured by tangible property located in the State of Mississippi.” (Emphasis added).
“The total amount of indebtedness” means only one thing, and that is the total of the face amounts of all notes or evidences of indebtedness. The intent of the legislature being crystal clear from the language used, there is no room for construction or interpretation of this statute.
*558 The chancery court was correct in affirming the decision of the State Auditor. The court’s decree denying a refund is affirmed.
AFFIRMED.
GILLESPIE, C. J., PATTERSON and IN-ZER, P. JJ., and SMITH, SUGG, WALKER, BROOM and LEE, JJ., concur.