ROBERTSON, Presiding Justice, for the Court:
The Auditor of Public Accounts of the State of Mississippi has appealed from the judgment of the Chancery Court of the First Judicial District of Hinds County ordering him, as State Auditor, to refund to Commercial Credit Plan (CCP) $66,603.48, the additional privilege tax assessed against CCP, which amount had been paid under protest to the State Tax Commission.
*151 This case involves the construction of MCA section 27-21-5 (1972):
“The annual rate by which the amount of the tax hereby levied shall be computed shall be one-fourth of the one per centum of the total amount of indebtedness secured by tangible property located in the State of Mississippi.” (Emphasis added).
In deciding this case, the crucial word in § 27-21-5 to be construed is “indebtedness”. In Webster’s Third New International Dictionary (1971), “indebtedness” is defined as “the extent to which one is indebted; something (as a sum of money) that is owed.”
The extent to which the borrower is indebted in the CCP form of note is stated in this way:
“FOR VALUE RECEIVED, Borrowers, jointly and severally, promise to pay to the order of the above Lender, at its office shown above, the Amount Financed shown above, together with finance charges from Date of Loan shown above, at the Agreed Rate of Charge shown above, payable in equal, consecutive monthly payments in the amount shown above, beginning on the First Payment Date shown above and continuing on the same day of each succeeding month until amount financed and finance charges are paid in full. Every payment shall be applied first to finance charges, computed in full to date thereof, and the remainder to the amount financed.” (Emphasis added).
In the CCP note, evidencing an actual loan made on February 28, 1978, by the Ellis Avenue, Jackson, Mississippi, office, under the heading “Amount Financed” is “$3400.00.” Under the heading “Annual Percentage Rate” is “18.00%”.
In his affidavit attached to CCP’s petition for appeal and review filed in the Chancery Court, H. D. Mulholland, division manager for the Southern Mississippi Division of CCP, explained the entries on the ledger card of this actual loan (this ledger card being attached to his affidavit):
“b. The principal amount of the note is $3,400.00, called the ‘AMOUNT FINANCED’ on the face of the note and the ledger card. The interest (called ‘FINANCE CHARGE’) that will be paid over the life of the loan (36 months) is ‘estimated’ to be $1,042.76. However, as can be seen by the record of the eight payments made at the bottom of the ledger card, the interest charged varies precisely with how long the borrower has had the use of the principal outstanding balance. For example, the ledger card shows that the sixth payment was made on September 29, 1978, forty-four days after the fifth payment, which was made on August 15, 1978. The sixth payment of $122.91 was applied, $67.45 to interest and $55.46 to principal reduction. The $67.45 is 18% interest on the principal outstanding balance of $3,065.95 for forty-four days. After the sixth payment, the principal outstanding balance was reduced to $3,010.49.
“c. The seventh payment made on October 17, 1978, was made only 18 days after the sixth payment. Consequently, the interest charged is smaller than that charged in the sixth payment ($27.09 compared with $67.45) and the reduction of the principal outstanding balance is larger ($95.82 compared with $55.46).
“9. The method described above for computation of interest is used in all of the 26 CCP offices for loans secured by tangible personal property in Mississippi.”
The usual “interest-bearing note” contains this type provision:
It is expressly understood and agreed that each payment upon this note, as and when made, shall be applied first to all interest accrued to the date of such payment and then to the principal of this note.
That is exactly the method used by all 26 CCP offices in Mississippi in applying the monthly installments paid on “loans secured by tangible personal property in Mississippi.”
Appellant contends that the decision in this case is mandated by the decision ren *152 dered in ABC Finance Corporation v. Auditor of Public Accounts, 339 So.2d 555 (Miss. 1976). ABC is readily distinguished from this case. There are fundamental differences between the ABC form of note and the CCP form of note. The indebtedness (the obligation of the borrower to the lender) in the ABC form of note is expressed in this language:
“Borrower promises to pay to the order of Lender the ‘total of payments’ stated in (a) below.” (Emphasis added).
(a) of the ABC note provides:
“Total of Payments $1,920.00
FINANCE CHARGE $ 551.01
ANNUAL PERCENTAGE RATE 34.85%
Amount Financed $1,368.99”
The ABC note provides for a pre-comput-ed “FINANCE CHARGE”. This finance or interest charge is computed for the entire period of the loan and the borrower promises and obligates himself to pay the “Total of Payments” which includes the pre-com-puted finance charge. In contrast, the CCP note is a true interest-bearing note, wherein the borrower obligates himself to pay the “AMOUNT FINANCED” which is the principal of the note. The monthly installment on the CCP note is applied first to the interest accrued to the date of payment and then to principal. The only reason there is an “Estimated Finance Charge” on the CCP note is that the Federal Truth in Lending Act requires that the borrower be advised of what the interest or finance charge will be if the note is paid according to its terms over the entire period of the note.
The term “the total amount of indebtedness” used in § 27-21-5 means, according to the express language of the ABC note, the “Total of Payments” which includes the “Finance Charge”. In stark contrast, “total amount of indebtedness” means, according to the express language of the CCP note, the “Amount Financed” which does not include the “Estimated Finance Charge.”
We are of the opinion that the chancellor correctly construed the language of the statute, as it applied to the CCP note, and thus was correct in his judgment that the Auditor of Public Accounts should refund to CCP the $66,603.48 additional privilege tax paid by it under protest to the State Tax Commission.
AFFIRMED.
SMITH, P. J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.
PATTERSON, C. J., took no part.